ANDREW R. HADEN
Acting United States Attorney
PATRICK C. SWAN
California Bar No. 306526
KATHERINE E.A. McGRATH
California Bar No. 287692
CARLING E. DONOVAN
New York Bar No. 5340484
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front St., Room 6293
San Diego, CA 92101
Telephone: (619) 546-8450
Email: Patrick.Swan@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>Plaintiff, <br><br>v. <br><br>MARK LARSEN (1), <br>CASK TECHNOLOGIES, LLC (2), <br><br>Defendants. | Case No.: 24-cr-2111-TWR <br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND LEAVE TO FILE FURTHER MOTIONS** |

## <u>UNITED STATES' RESPONSE IN OPPOSITION</u>

The United States responds to Defendants' Motions to Compel Discovery, Preserve Evidence, and for Leave to File Further Motions (ECF Nos. 23 and 24) as follows:

## I

## PROCEDURAL HISTORY

On October 8, 2024, a federal grand jury returned a two-count Indictment charging Defendants Mark Larsen and Cask Technologies, LLC with one count of Conspiracy, in violation of 18 U.S.C. § 371, and Defendant Mark Larsen with one count of Bribery of a Public Official, in violation of 18 U.S.C. § 201(b)(1)(A) and (C). ECF No. 1.

-1-

On October 30, 2024, Defendants made their initial appearances and were arraigned on the Indictment. ECF No. 9. After their initial appearances, the Parties met and conferred on the language to be included in a protective order regarding discovery. The Parties later agreed on the language of the proposed order.

On December 3, 2024, the Parties Filed a Joint Motion for a Protective Order Regarding Discovery, ECF No. 18, and submitted a proposed Protective Order to the Court. The Court issued a Protective Order Regarding Discovery on December 4, 2024, ECF No. 19, and the United States produced its initial set of discovery later that day.

Further, on December 3, 2024, the United States filed its initial Local Criminal Rule 16.1a Status Report, ECF No. 21, and Defendants Mark Larsen and Cask Technologies, LLC filed Motions to Compel Discovery, ECF Nos. 23 and 24.

On December 4, 2024, the Parties filed a Joint Motion to Declare Complex Case and Exclude Time under the Speedy Trial Act. ECF No. 25.

At the initial Motion Hearing/Trial Setting on December 6, 2024, the Court granted the Joint Motion to Declare Complex Case. ECF No. 28. The Court also signed an Order deeming the case complex under 18 U.S.C. § 3161(h)(7)(B)(ii) and excluded time under the Speedy Trial Act from December 6, 2024 to April 11, 2025. ECF No. 27.

## II

## THE COURT SHOULD DENY DEFENDANTS' MOTIONS

The United States recognizes its discovery obligations and will continue to meet them and produce discovery to which Defendants are entitled under the United States Constitution, Federal Rules of Criminal Procedure 12 and 16, the *Jencks* Act, and the common law, including *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). The United States will also conduct a *Henthorn* inquiry if the case does not resolve. The investigation of this case is still ongoing and the United States will continue to produce discovery as it becomes known and available and respond to any reasonable and specific discovery requests made by the defense. Further, counsel will meet and confer as necessary to resolve any reasonable discovery disputes that arise.

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND FOR LEAVE TO FILE FURTHER MOTIONS

The United States responds to Defendants' itemized requests as follows:

**(1) Defendant's Statements**

The United States has complied with this request and produced documents containing Defendant Mark Larsen's statements under Federal Rule of Criminal Procedure 16(a)(1)(A) and (B). The United States has also produced thousands of emails reflecting Defendant Mark Larsen's statements and statements by other agents for Cask Technologies, LLC, among other records. Defendants have not specifically identified any documents containing their statements that have not been produced, but the United States invites the defense to identify such documents to ensure a complete production.

**(2) Arrest Reports, Notes, and Dispatch Tapes**

Defendant Mark Larsen was not arrested in this case. He appeared for his initial appearance pursuant to a summons. *See* ECF Nos. 3, 6, 9. Thus, there are no arrest reports regarding Defendant Mark Larsen. Because this is a complex bribery and procurement fraud scheme, there are no applicable "dispatch tapes" related to the offense. The United States has disclosed a significant amount of investigation reports and notes in its four productions to date and will continue to provide such reports on a rolling basis if and when new reports are generated. Although the United States has already produced agent notes along with corresponding reports, prior production of agent notes is unnecessary because they are not "statements" within the meaning of the *Jencks* Act unless they comprise both a substantially verbatim narrative of a witness's assertions and they have been approved or adopted by the witness. *United States v. Spencer*, 618 F.2d 605, 606-07 (9th Cir. 1980); *United States v. Kaiser*, 660 F.2d 724, 731-32 (9th Cir. 1981) (overruled on other grounds). Defendants have not specifically identified any arrest reports, notes, or dispatch tapes that they believe have not been produced, but the United States invites the defense to identify such documents to ensure a complete production.

**(3) Reports of Scientific Tests or Examinations**

The United States does not have responsive results or reports of scientific tests, examinations, or experiments under Federal Rule of Criminal Procedure 16(a)(1)(F) at this

time. If this changes, the United States will comply with its discovery obligations and produce such results or reports to Defendants. The United States has produced downloads of electronic devices in this case, but does not consider such evidence to be scientific tests or examinations as set forth under Rule 16 of the Federal Rules of Criminal Procedure. There were no relevant fingerprints pulled in the investigation of this case, therefore the United States objects to the request for any reports relating to fingerprint analysis.

**(4)  *Brady* Material**

The United States recognizes its obligations under *Brady*, 373 U.S. 83 (1963) and *Giglio*, 405 U.S. 150 (1972) to provide evidence that is either exculpatory or could be used to impeach witnesses called by the United States, including material information about bias. This obligation extends to evidence that is not requested by the defense. *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Evidence is material, and must be disclosed [under *Brady*], 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).

The United States has and will continue to disclose exculpatory information or evidence favorable to Defendants when such evidence is material to guilt or punishment or information that may result in a lower sentence under the Guidelines or Section 3553(a). The United States incorporates this response to each item addressed in this opposition.

But the United States will not open all of its files for discovery. *Brady* does not require the United States to produce information in the custody, control, or possession of all government agencies. *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989); *United States v. Henke*, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). The United States is also not required to disclose: (1) neutral, irrelevant, speculative, or inculpatory evidence (*see United States v. Smith*, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to defendant from other sources (*see United States v. Bracy*, 67 F.3d 1421, 1428-

-4-

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND FOR LEAVE TO FILE FURTHER MOTIONS

29 (9th Cir. 1995)); (3) evidence that defendant currently possesses (*see United States v. Mikaelian*, 168 F.3d 380, 389-90 (9th Cir. 1999), *amended by* 180 F.3d 1091); or (4) evidence a federal prosecutor could not reasonably be imputed to have knowledge or control over (*see United States v. Hanson*, 262 F.3d 1217, 1234-35 (11th Cir. 2001)).

Further, *Brady* does not require the United States to "create exculpatory evidence that does not exist" (*United States v. Sukumolahan*, 610 F.2d 685, 687 (9th Cir. 1980)), but only that it "supply a defendant with exculpatory information of which it is aware" (*United States v. Flores*, 540 F.2d 432, 438 (9th Cir 1976). At this time, the United States is not aware of known exculpatory evidence to produce.

### (5) Any Information that May Result in a Lower Sentence under the United States Sentencing Guidelines

As Defendants note, this request falls under *Brady*. The United States is aware of its discovery obligations and will comply with *Brady*. The United States also produced information responsive to this request, including Defendant Mark Larsen's RAP Sheet. This information will allow Defendants to determine the applicability of any specific offense characteristic and Defendant Mark Larsen's criminal history score. If the defense believes that there are any documents that may result in a lower sentence under the Sentencing Guidelines that have not been produced, the United States invites the defense to identify that discovery to ensure a complete production.

### (6) Defendant's Prior Record

The United States has produced a copy of Defendant Mark Larsen's RAP sheet in discovery under Federal Rule of Criminal Procedure 16(a)(1)(D). Defendant Mark Larsen does not appear to have criminal history.

### (7) Proposed 404(b) Evidence

The United States will provide notice and disclose any proposed 404(b) evidence that it intends to introduce at trial prior to the date to file motions in limine.

//
//

**(8) Evidence Seized**

The United States has produced evidence that was seized pursuant to search warrants in the investigation of this case, including a search of various residential/office locations and electronic devices, under Federal Rule of Criminal Procedure 16(a)(1)(E). Defendants have not specifically identified any evidence seized from Defendant Mark Larsen's person or property that has not been produced, or Cask Technologies, LLC's office location that has not been produced, but the United States invites the defense to identify such evidence to ensure a complete production.

**(9) Request for Preservation of Evidence**

The Constitution requires the United States to preserve evidence "that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). To require preservation, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489; *see also Cooper v. Calderon*, 255 F.3d 1104, 1113-14 (9th Cir. 2001). There is no rule requiring the United States to preserve all evidence indefinitely, especially when the parties have had the opportunity to inspect and copy all of the documents and records.

Considering the United States' ongoing efforts to preserve the evidence in this case and Defendants' access to those documents, any failure to gather and preserve evidence would not violate due process absent bad faith by the United States that results in actual prejudice to Defendants. *See Illinois v. Fisher*, 540 U.S. 544, 548 (2004); *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *United States v. Rivera-Relle*, 322 F.3d 670, 677-68 (9th Cir. 2003); *Downs v. Hoyt*, 232 F.3d 1031, 1037-38 (9th Cir. 2000). Considering the United States' ongoing efforts to preserve the seized evidence in this case, the Court need not enter an order requiring the United States to preserve such materials.

The United States will continue to preserve agent rough notes and other documents covered by the *Jencks* Act. The United States intends to preserve the downloads of

-6-

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND FOR LEAVE TO FILE FURTHER MOTIONS

electronic devices obtained in this case. A court order requiring preservation of a general category of documents is unnecessary at this time. Defendants have not specifically identified documents covered by the *Jencks* Act that they want preserved or produced, but the United States invites the defense to identify such documents to ensure both preservation and a complete production.

**(10) Tangible Evidence**

The United States has complied with this request has made available any tangible objects that were seized through the production of scanned copies of documents and other records and through making those items available in discovery. There are no known vehicles relevant to this case. Defendants have not specifically identified documents or objects that have not been produced, but the United States invites the defense to identify such documents or objects to ensure a complete production.

**(11) Evidence of Bias or Motive to Lie**

The United States recognizes its obligation to provide information related to the bias, prejudice, or other motivation of witnesses called by the United States. The United States will provide such impeachment material in its possession, custody, or control, if it exists, at the time it files its trial brief or soon thereafter, if not already produced. The United States intends to produce documents reflecting agreements witnesses have with the United States in this case, including proffer letters, immunity agreements, and cooperation agreements. *See Roviaro v. United States*, 353 U.S. 53 (1957); *Giglio*, 405 U.S. 150 (1972). At this time, the United States is unaware of a prospective witness that is knows to be biased or prejudiced against Defendants or have an apparent motive to falsify or distort his or her testimony. If the United States has any doubt about the discoverability of information about a potential witness's bias or motive to lie, then it will submit such materials in camera for review by the Court in advance of trial.

**(12) Impeachment Evidence**

Defendants request evidence that any prospective witness called by the United States has engaged in, or is under investigation for, any prior bad or criminal act, as well as any

-7-

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL
DISCOVERY, PRESERVE EVIDENCE, AND FOR LEAVE TO FILE FURTHER MOTIONS

evidence that a witness has made a false statement. Defendants are not entitled to any and all evidence that a prospective witness is under criminal investigation by federal, state, or local authorities, nor is the United States obligated to wholesale turn over the criminal records or RAP sheet of its potential witnesses. *United States v. Taylor*, 542 F.2d 1023, 1026 (8th Cir. 1976). The United States is also not required to disclose information not within the possession, custody, or control of the prosecution team in this matter. *See United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); *cf. Beaver v. United States*, 351 F.2d 507 (9th Cir. 1965) (*Jencks* Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities). Further, the United States is not aware of discovery showing that a witness has knowingly made a false statement. If that changes, the United States will comply with its discovery obligations and produce such discovery.

Further, the United States will provide evidence of prior convictions, if any, that could be used to impeach witnesses under Federal Rules of Evidence 608 and 609 that it intends to call in its case-in-chief. If there are concerns about the discoverability of information about a witness's criminal history, the United States will submit such materials in-camera for the Court's review.

**(13) Evidence of Criminal Investigation of Any Government Witness**

The United States incorporates its response to the request above.

**(14) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling**

Defendants request evidence tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired. The United States will produce evidence bearing on the credibility of testifying witnesses in its possession,

-8-

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND FOR LEAVE TO FILE FURTHER MOTIONS

custody, or control at the time it files its trial brief or soon thereafter, if not already produced in discovery. The United States objects to Defendants' request for disclosure of whether any prospective witness has ever used narcotics or abused alcohol.

**(15) Witness Addresses**

Rule 16 does not require disclosure of names or addresses of non-expert witnesses before trial. *See, e.g., United States v. Steel*, 759 F.2d 706, 709 (9th Cir. 1985) ("Generally, the law in this circuit is that a witness list need not be provided in non-capital cases."); *United States v. Sukumolachan*, 610 F.2d 685, 688 (9th Cir. 1980 ("The government need not furnish the defendant with a list of witnesses in a non-capital case."); *see also United States v. W.R. Grace*, 526 F.3d 499, 512 (9th Cir. 2008) (explaining that Rule 16 does not require such disclosure as "Congress was concerned that a mandatory disclosure rule would discourage government witnesses from testifying and lead to witness intimidation").

Regardless, before trial, the parties can meet and confer about this issue and assess whether pre-trial disclosure of witness names and addresses is necessary for Defendants to prepare for trial.

**(16) Name of Witnesses Favorable to the Defendant**

The United States produced a significant amount of investigation reports to Defendants and will continue to comply with its discovery obligations. Whether a witness in those reports is favorable to Defendants or not is for Defendants to determine.

**(17) Statements Relevant to the Defense**

The United States incorporates each response in this opposition to this request.

The United States believes that it has produced all relevant documents and objects under Rule 16 in its possession, custody, or control that are material to preparing the defense in this case. Discovery and investigation continue. If the United States obtains additional documents or objects that are material to preparing the defense at a later date, the United States will produce such documents or objects upon receipt. If there is a specific document that the defense believes is material to preparing the defense which has not been

produced to date, the United States invites defense counsel to specify the document missing from the productions to ensure a complete production.

**(18)    *Jencks* Act Material**

The United States has and will continue to comply with its discovery obligations under the *Jencks* Act. For purposes of the *Jencks* Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. *See* 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the *Jencks* Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. *United States v. Boshell*, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing *Goldberg v. United States*, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the *Jencks* Act due to the incomplete nature of the notes." *United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the *Jencks* Act statements testifies on direct examination. *See United States v. Robertson*, 15 F.3d 862, 873 (9th Cir. 1994). The United States nonetheless has produced and anticipates producing further *Jencks* Act material prior to trial.

**(19)    *Giglio* Information**

The United States has complied, and will continue to comply, with its discovery obligations under *Giglio*, 405 U.S. 150 (1972).

**(20)    Personnel Records of Government Officers Involved in the Investigation**

The United States has complied, and will continue to comply, with its obligations under *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the

appropriate standard of materiality. *United States v. Booth*, 309 F.3d 566, 574 (9th Cir. 2002). If the United States is concerned if certain incriminating information in the personnel file is "material," it will submit that information to the Court for an in camera inspection and review. The United States objects to Defendants' improper request for personnel records in a *Pitchess* motion.

**(21) Government Examination of Law Enforcement Personnel Files**

The United States incorporates its response to the previous request.

The United States has complied, and will continue to comply, with its obligations under *Henthorn*, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. *Booth*, 309 F.3d at 574. If the United States is concerned if certain incriminating information in the personnel file is "material," it will submit that information to the Court for an in camera inspection and review. The United States objects to Defendants' improper request for personnel records in a *Pitchess* motion.

## III

## THE COURT SHOULD DENY LEAVE TO FILE FURTHER MOTIONS UNLESS BASED ON NEWLY DISCOVERED EVIDENCE

As to Defendants' request to file further motions, the United States does not oppose the request so long as further motions are based on newly discovery evidence or discovery produced after the date of this filing.

//
//
//
//
//
//

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND FOR LEAVE TO FILE FURTHER MOTIONS

# IV
# CONCLUSION

For the reasons above, the Court should deny Defendants' Motions to Compel Discovery, Preserve Evidence, and For Leave to File Further Motions if not based on newly discovered evidence. The United States embraces its discovery obligations and will continue to produce discovery as it becomes known and available.

DATED: April 4, 2025

Respectfully submitted,

ANDREW R. HADEN
Acting United States Attorney

*/s Patrick C. Swan*
PATRICK C. SWAN
KATHERINE E.A. McGRATH
CARLING E. DONOVAN
Assistant U.S. Attorneys

Attorneys for the United States

-12-

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND FOR LEAVE TO FILE FURTHER MOTIONS